NOT FOR PUBLICATION                                              CLOSED

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
                                            :
DIANA SPANU,                                :
                                            :   Civil Docket No. 08-6193 (FSH)
             Plaintiff,                     :
                                            :
     v.                                     :   **OPINION & ORDER**
                                            :
JANET NAPOLITANO, *et al.*,[1]              :
                                            :   September 24, 2009
             Defendants.                    :
_____:

This matter comes before the Court upon Defendants' motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6); and the Court having considered the motion on the papers pursuant to Fed. R. Civ. P. 78;[2] and it appearing that:

1. Plaintiff is a Romanian citizen who entered the United States on July 11, 2006 as an au pair on a J-1 exchange visitor visa, with permission to remain in this country until the end of her au pair program on June 12, 2007.[3]

---

[1] In accordance with Fed. R. Civ. P. 25(d), Secretary Janet A. Napolitano is automatically substituted for former Secretary Michael Chertoff and Director Paul Novak is automatically substituted for former Acting Director Bret Gregg as the Defendants in this case.

[2] When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all of the allegations in the Complaint as well as all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court may consider the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based on those documents. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1992).

[3] Under the Exchange Visitor Program, foreign nationals (also known as "au pairs") may enter the United States on J-1 exchange visitor visas to live with American host families. See 22 C.F.R. §§ 62.31, 214.2. An au pair must be sponsored by a Department of State approved entity. 8 C.F.R. § 214.2. Here, Plaintiff was sponsored by the American program "goAuPair," working

2.  Upon her arrival, Plaintiff was placed with an American host family in Bridgewater, New Jersey.  Plaintiff alleges that her experience with her host family "started badly and got worse," and that in October 2006, she left her host family because "it seemed that [her] life was in danger."  Compl. ¶ 13.  As a result of Plaintiff leaving her host family, and thus violating the Exchange Visitor Program regulations, Plaintiff's sponsor terminated her J-1 exchange visitor status on October 30, 2006.[4]

3.  Nearly five months later, on March 26, 2007, Plaintiff filed an application with USCIS to change her status from J-1 exchange visitor to B-2 tourist visitor.  After reviewing her application, USCIS asked Plaintiff to explain the termination of her J-1 exchange visitor status.  Plaintiff responded only by asserting that her status was valid until June 12, 2007.  USCIS found otherwise: noting that Plaintiff's status had terminated in October 2006, USCIS denied Plaintiff's application on July 23, 2007 on grounds that only an alien continuing to maintain her status is eligible to apply for a change in status.  See 8 C.F.R. § 248.1.

4.  On August 17, 2007, Plaintiff appealed this denial, alleging for the first time that she left her host family because of psychological abuse, threats, and fear for her life.  Ex. E, Spanu

---

in conjunction with a Romanian agency.

[4]  See 22 C.F.R. § 62.40(a)(1), (3) ("A sponsor shall terminate an exchange visitor's participation in its program when the exchange visitor: (1) [f]ails to pursue the activities for which he or she was admitted to the United States [or] . . . (3) [v]iolates the Exchange Visitor Program regulations and/or the sponsor's rules governing the program, if, in the sponsor's opinion, termination is warranted").

The date that Plaintiff's status was terminated is unclear: in some correspondence to Plaintiff, the United States Citizenship and Immigration Services ("USCIS") states that Plaintiff's status was terminated on October 6, 2006, but in other correspondence, USCIS states that it was terminated on October 30, 2006.  Viewing the facts in the light more favorable to Plaintiff, the Court will use the later date of October 30, 2006 as the date when Plaintiff's status was terminated.

Aff. ¶¶ 9, 10, 12.  USCIS affirmed the denial on November 5, 2007, stating that Plaintiff's J-1 exchange visitor status had terminated in October 2006, and that she had not submitted any evidence supporting her allegations that would justify a reversal of the denial.  Plaintiff then filed a motion seeking reconsideration on December 3, 2007, which was denied on June 9, 2008 on grounds that Plaintiff's motion stated no new evidence nor gave reasons for reconsideration.

5.  On September 19, 2007, while the appeal of her first application was pending, Plaintiff filed a second application with USCIS to change her status to F-1 student.[5]  USCIS denied this application on August 7, 2008 on the same grounds:  Only an alien continuing to maintain a status is eligible to apply for a change in status; Plaintiff had not submitted evidence of a current status, and therefore was ineligible to request a status change.

6.  Plaintiff, appearing *pro se*, initiated this suit on December 17, 2008 seeking judicial review of USCIS's decision to deny her second application pursuant to the Administrative Procedure Act (the "APA").[6]  Specifically, Plaintiff asks the Court to (a) declare that Defendants erred by finding that Plaintiff is ineligible to apply for a change in status; and (b) order Defendants to adjudicate Plaintiff's second application on the merits.[7]

---

[5] Before filing this application, Plaintiff was admitted to Montclair State University for a master's degree program.

[6] Under the APA and 8 U.S.C. § 1252 (a)(2)(B)(ii), district courts may review final agency decisions that are nondiscretionary and purely legal determinations. See Mendez-Moranchel v. Ashcroft, 338 F.3d 176, 178 (3d Cir. 2003).  A determination as to an alien's eligibility to change her status is a purely legal determination, because it is determined by statute, and thus subject to judicial review.  Pinho v. Gonzales, 432 F.3d 193, 204 (3d Cir. 2005).

[7] Plaintiff also claims that both the Romanian and American J-1 program sponsors failed in their contractual obligations to place her with an appropriate family, and to place her with a new host family when the prior one became unsuitable.  Compl. ¶ 16.  However, neither agency

7.  Defendants have moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  To survive a Rule 12(b)(6) motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (complaint must state "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element").  A motion to dismiss should be granted "if it appears to a certainty that no relief could be granted under any set of facts which could be proved."  Morse, 132 F.3d at 906.

8.  Pursuant to the APA, the Court must uphold an agency's action unless it is "arbitrary, capricious, [or] an abuse of discretion," or "unsupported by substantial evidence."  5 U.S.C. § 706; Soltane v. United States Dept. of Justice, 381 F.3d 143, 148 (3d Cir. 2004).  The Court generally defers to an agency's interpretation of a regulation unless the interpretation is "plainly erroneous or inconsistent with the regulation."  United States v. Larionoff, 431 U.S. 864, 872 (1977); see also Rite Aid of Pennsylvania, Inc. v. Houston, 171 F.3d 842, 853 (3d Cir. 1999) (finding that the Court must uphold an agency's "decision of less than ideal clarity if the agency's path may reasonably be discerned" (internal citations omitted)).

9.  Here, Plaintiff alleges that USCIS misinterpreted the plain language of the statute when denying her second application.[8]  Compl. ¶ 1.  However, she has alleged no facts nor law

---

is named as a Defendant here, nor has Plaintiff pled claims for breach of contract.

[8] Although Plaintiff does not specify which statute was "misinterpreted," the Court assumes that she is referring to 8 C.F.R. § 248.1(b), which states, in relevant part, that "a change of status may not be approved for an alien who failed to maintain the previously accorded status."  The Court also reads the Complaint as seeking review of USCIS's denial of her second application only.  See, e.g., Compl. ¶ 18 ("Plaintiff desires a judicial determination that she is

that tend to establish that USCIS's interpretation is "plainly erroneous or inconsistent with the regulation." Rather, it appears that USCIS acted exactly in accordance with 8 C.F.R. § 248.1 when denying her application. That regulation precludes approval of a change in status if an alien has failed to maintain her previously accorded status. Here, Plaintiff was clearly out-of-status when she applied to change her status to F-1 student.[9] The Court therefore finds that USCIS's decision to deny Plaintiff's request to change her status to F-1 student was in accordance with the law, and not arbitrary, capricious, or an abuse of discretion.

**IT IS, THEREFORE,** on this 24th day of September, 2009,

**ORDERED** that Defendants' Motion to Dismiss the Complaint is **GRANTED**;[10] and it is

**FURTHER ORDERED** that this case is **CLOSED**.

/s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**

---

eligible for change of status to F-1 academic student").

[9] To the extent Plaintiff is contending that USCIS should have exercised its discretion to find her eligible to apply for a change in status, despite being out-of-status, such as on the basis of her allegations of abuse, such a claim is not properly before this Court. Agency decisions involving discretion may not be reviewed by district courts. Pinho, 423 F.3d at 204 (decisions committed to agency discretion are not within the jurisdictional review of the district court).

[10] Although leave to amend a complaint is freely granted, the filing of an amended complaint would not cure the deficiencies in this instance.